UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY CHERRY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 03326 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| FIVE BROTHERS MORTGAGE | ) | |
| COMPANY SERVICES AND | ) | |
| SECURING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Larry Cherry alleges that Defendant Five Brothers Mortgage Company Services and Securing, Inc. broke into a south-side Chicago house in which he was living and then boarded it up with his possessions inside it. Cherry has now sued Five Brothers on several tort claims. Five Brothers moved to dismiss, arguing that Cherry had no standing to sue, and that each of his claims failed to adequately state a claim for relief. R. 34, Mot. Dismiss.[1] Because the motion to dismiss relied on facts outside the pleadings, the Court converted the motion to an early motion for summary judgment, limited to the issue of whether Cherry has any ownership interest in the property. R. 37, Minute Order.

---

[1]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number. The Court has diversity jurisdiction over these claims under 28 U.S.C. § 1332. Larry Cherry is a citizen of Illinois. R. 1, Compl. at 1. Five Brothers is a citizen of Michigan (it is a Michigan corporation with its principal place of business in Michigan). R. 20, Juris. Stmt.; *see also* R. 27, Minute Entry. The amount in controversy is over $75,000, though not by much (in the text below, the Opinion describes the categories of Cherry's alleged damages).

For the reasons explained below, summary judgment is granted on Count 4 (unjust enrichment), Count 6 (tortious interference with economic opportunity), and Count 7 (conversion) as it relates to the *real* property. Count 1 as it applies to Cherry's Fourth Amendment claim, Count 3 (negligence), and Count 5 (intentional infliction of emotional distress) are dismissed with prejudice. Count 1 as to Cherry's wrongful-eviction claim is dismissed without prejudice to Cherry re-pleading a common law wrongful-eviction claim. Finally, Count 2 (trespass) and Cherry's claim of conversion as to his *personal* property in Count 7 survive.

## I. Background

For the purposes of this motion, the Court accepts as true the allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The limited exception is on the factual issue of whether Cherry owns the house at issue (the factual question on which the Court has converted this into a motion for summary judgment). For that issue, Cherry had an obligation to produce evidence. That means that allegations in his complaint will be insufficient to establish his ownership interest in the home. But even on that summary judgment issue, of course, the Court views the evidence in the light most favorable to the Cherry. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In 2002, a homeowner named Henry Houston mortgaged his property at 102 West 117th Street in Chicago. R. 35, Def.'s Exh. A, Houston Mortgage. In January 2013, U.S. Bank National Association, Houston's mortgagee, began proceedings to foreclose on that mortgage. R. 35, Def.'s Exh. B, Foreclosure Compl. U.S. Bank

succeeded in foreclosing, and in May 2015 it purchased the property at a foreclosure auction. R. 35, Def.'s Exh. C, Rep. of Sale; R. 35, Def.'s Exh. D, Order Approving Sale. The Order Approving Sale was recorded at the Cook County Recorder of Deeds on October 7, 2015. Def.'s Exh. D, Order Approving Sale at 1.

In 2017, Houston allegedly and purportedly sold the same property to Plaintiff Larry Cherry, giving Cherry an option to buy the property for $7,000. R. 38, Pl.'s Exh. 1, Land Contract; *see also* R. 32, Am. Compl. ¶ 1. Cherry has not presented any evidence to suggest that he recorded the transaction with the County. Five Brothers suggests that the contract is fraudulent. R. 40, Def.'s Reply at 2 ("Henry Houston's signature on the document looks dramatically different from the signature of Henry Houston on the copy of the mortgage."). In any case, Cherry asserts that he "paid [Houston] substantial terms of money in cash and put substantial improvements into the property believing that the contract was valid." R. 38, Pl.'s Resp. ¶ 8. Cherry alleges that he had paid for over $20,000 in repairs on the property, and $30,000 "worth of improvements and services." Am. Compl. ¶¶ 6, 27. He also alleges that he had "over $35,000 worth of furniture, equipment, and supplies" stored in it. *Id*.

Cherry came home one day to find workers from Five Brothers inside the house "installing steel doors and window covers." Am. Compl. ¶¶ 2, 7. He called the Chicago Police Department, but after the police officers arrived and spoke with Five Brothers employees, they let Five Brothers continue working. *Id*. ¶¶ 8-11. According to Cherry, workers showed the officers some documents that they refused to show Cherry. *Id*. ¶ 9. Cherry then made a telephone call to Five Brothers, and one of its

representatives told him that Five Brothers had been authorized to board up the property by U.S. Bank. *Id.* ¶¶ 12-13. Finally, Cherry called U.S. Bank, who allegedly told him that "the subject property was not in their inventory." *Id.* ¶¶ 14-15. Five Brothers refused to show Cherry any paperwork that they had received from U.S. Bank. *Id.* ¶¶ 9, 16-17.

## II. Legal Standard

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain

---

[2]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## B. Motion for Summary Judgment

As described earlier, the Court has converted Five Brothers' motion into an early summary judgment motion on the factual issue of Cherry's ownership or legal interest in the property. Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must "view the facts and draw reasonable inferences in the light most favorable to the" non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (cleaned up). The Court "may not weigh conflicting evidence or make credibility determinations," *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (cleaned up), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter

5

of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Standing

Five Brothers first argues that the Complaint should be dismissed because Cherry does not have standing to bring the claims. R. 35, Def.'s Br. at 2-3. Five Brothers' theory is that Cherry cannot establish an injury-in-fact because he did not own the property from which he alleges he was wrongfully evicted. *Id.*; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (setting out the elements of Article III standing, including "an injury in fact, … a causal connection between the injury and the conduct complained of, … and [a likelihood] that the injury will be redressed by a favorable decision.") (cleaned up). As previewed above, the Court converted the motion to dismiss to summary judgment motion on the limited issue of whether Cherry had a valid ownership interest in the property. R. 37, Minute Order.

Based on the record evidence, it is clear that there is no dispute of material fact on the ownership of the property. U.S. Bank National Association began foreclosure proceedings on Henry Houston's mortgage in January 2013. *See* Def.'s Exh. B, Foreclosure Compl. U.S. Bank then purchased the property at auction in 2015. *See* Def.'s Exh. C, Rep. of Sale; Def.'s Exh. D, Order Approving Sale at 2. Cherry,

6

on the other hand, has a contract allegedly signed by Houston that purports to transfer him the property as of August 2017. Pl.'s Exh. 1, Land Contract. Five Brothers maintains that the contract is fraudulent. Def.'s Reply at 2 ("Henry Houston's signature on the document looks dramatically different from the signature of Henry Houston on the copy of the mortgage."). It could be. But the Court need not decide that issue (and, on summary judgment, might not have been able to). Even if Cherry and Houston *did* both sign the contract, and Cherry entered into it in good faith, even he now *admits* that he was duped. Pl.'s Resp. at 2 ("Plaintiff Cherry appears to have been a victim of property fraud."). Houston did not have any authority to lease or to sell the property in August 2017—he had already lost it in foreclosure. And while Cherry has not presented any evidence that he recorded his title, U.S. Bank did so in 2015. *See* Def.'s Exh. D, Order Approving Sale at 1. So U.S. Bank's title to the property is clearly superior to Cherry's. Five Brothers wins summary judgment on that limited factual issue.

But that does not mean that Cherry lacks standing to sue Five Brothers for its conduct in boarding up his place of residence. Several of the legal theories discussed below do *not* require Cherry to have had an ownership interest in the property. On those counts at least, Cherry has standing. The Court will discuss each count in turn.

### B. Wrongful Eviction (Count 1)

Cherry's first claim is for wrongful eviction. This count is sparsely alleged; it discusses the Fourth Amendment and then alleges that "Defendant Five Brothers interfered with [] Cherry's possessory rights when they broke in and boarded up the

property without notice or permission." Am. Compl. ¶ 29. Not unreasonably, Five Brothers assumes that Cherry's claim is for relief under the Illinois Forcible Entry and Detainer Act, 735 ILCS 5/9-101, *et seq.* Def.'s Br. at 4. Five Brothers' only argument on this issue is that Cherry cannot sue under the Act because he has no legal interest in the property. *Id.*

That is not quite accurate. The Act prohibits the owner of a property from taking extra-legal action against anyone in the property—whether or not the occupant has a right to be there. *People v. Evans*, 516 N.E.2d 817, 819 (Ill. App. Ct. 1987) ("[N]o person has the right to take possession, by force, of premises occupied or possessed by another, even though such person may be justly entitled to such possession."). So, the Act would have applied to Cherry's tenancy even though he clearly lacked a legal ownership interest in the property. For that reason, and because Cherry's lack of ownership of the property under the Act is the only argument that Five Brothers makes on this count, summary judgment is inappropriate on this version of the claim.

Instead, the real problem with a claim under the Forcible Entry and Detainer Act is that the Act does not create a cause of action for tort damages at all—only restoration of possession. *See White v. City of Markham*, 1999 WL 1044835, at *4 n.8 (N.D. Ill. Nov. 16, 1999) ("[T]he [Act] merely allows for the restoration of possession, not tort damages."); *see also Ewo v. YMCA of Metro. Chi., LLC*, 2018 WL 5117493, at *2 n.2 (Ill. App. Ct. Oct. 18, 2018) (noting that the trial court had found that the FEDA did not create its own right of action). In contrast, there is an Illinois common law

8

tort for wrongful eviction. *Miller v. Washington*, 2013 WL 1340590, at *9 (N.D. Ill. March 30, 2013); *see, e.g.*, *Burnex Oil Co. v. Floyd*, 281 N.E.2d 705, 707 (Ill. App. Ct. 1971); *Cochrane v. Tuttle*, 75 Ill. 361, 361 (1874); *Leiter v. Day*, 35 Ill. App. 248, 251 (1889); 24 Ill. Law and Practice Landlord and Tenant § 124 ("[A] tenant who has been evicted may sue for recovery of possession or maintain an action for damages because of the eviction.") (West 2019) (citing *Applegate v. Inland Real Estate Corp.*, 441 N.E.2d 379, 382 (Ill. App. Ct. 1982); *Gillette v. Anderson*, 282 N.E.2d 149, 151-52 (Ill. App. Ct. 1972)). A tenant can sue for damages where the landlord has constructively evicted him by doing "something of a grave and permanent character with the intention of depriving the tenant of enjoyment of the premises." *Applegate*, 441 N.E.2d at 382. A wrongful or constructive eviction claim requires that the tenant have actually abandoned the premises. *Id*.

The problem here, however, is that Cherry does not make any argument as to the common law tort. Pl.'s Resp. at 2-3. Instead, he too makes an argument under the Forcible Entry and Detainer Act, which cannot apply here. *See id*. So the claim must be dismissed. But because the amended complaint does include some elements of a common law wrongful-eviction claim, the dismissal is without prejudice to Cherry proposing an amended complaint that tries to assert the common law claim.

### C. Fourth Amendment (Count 1)

Count 1 also includes Cherry's Fourth Amendment claim. Cherry alleges that "[t]he language of the Fourth Amendment [] protects people from unreasonable searches and seizures … and … the Amendment protects property even where privacy

or liberty is not implicated." Am. Compl. ¶¶ 28-29. Five Brothers argues that Cherry cannot sustain a Fourth Amendment claim against it because it is not a state actor. Def.'s Br. at 4. Five Brothers is correct. *United States v. Jacobsen*, 466 U.S. 109, 113-14 (1984) (explaining that the Fourth Amendment is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.") (cleaned up); *see also Bell v. City of Chi.*, 835 F.3d 736, 738-89 (7th Cir. 2016). Cherry has neither alleged any state action nor sued any state actor. *See* Am. Compl. ¶ 3 (stating that Five Brothers is a Michigan corporation, and not alleging that it is a state actor). He might have sued the Chicago Police Department, which he alleges allowed Five Brothers to board up his home, *see id.* ¶¶ 8-10, but he did not. And he might have alleged some type of joint state action, like a conspiracy with state actors to deprive a person of their constitutional rights. *See Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002). But Cherry has not alleged any sort of conspiracy between the police officers and Five Brothers—by his account, it appears that the Chicago police first learned of Five Brothers' action from Cherry's own phone call. Am. Compl. ¶¶ 8-10. And there are simply no facts in the complaint to support an inference that the Chicago police were involved in Five Brothers' work in any way.[3] So the Fourth Amendment claim in Count 1 is dismissed with prejudice.

---

[3]Cherry's Fourth Amendment claim would also require him to establish that he had a legitimate expectation of privacy on the property, as is required for Fourth Amendment "standing." This is distinct from Five Brothers' more general standing argument, and not a jurisdictional question. *See Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018). Because Cherry did not have a legal property interest in the home, he may fall outside the categories of people who have the right to sue under the Fourth Amendment for unreasonable searches

### D. Trespass (Count 2)

Count 2 of Cherry's complaint is a trespass claim. Am. Compl. ¶¶ 30. Cherry alleges that Five Brothers entered his property without his authorization. *Id*. ¶ 2. In its motion, Five Brothers argues that Count 2 must fail as a matter of law because Cherry "did not, and does not, own or have any possessory rights in the Property." Def.'s Br. at 4. Cherry's ownership interest in the property (or lack thereof) is precisely the limited issue on which the Court converted the dismissal motion to a summary judgment motion, and instructed Cherry to provide evidence, as described above. The problem for Five Brothers' motion, however, is that a person need not *own* property to have a trespass claim against someone who enters it without authorization. Instead, a trespass-plaintiff must only establish that he had *actual possession* of the property—something that Cherry has clearly alleged in his complaint. *See Simmons v. Catton*, 764 F. Supp. 2d 1012, 1021 (C.D. Ill. 2011) ("In Illinois, to sustain a cause of action for trespass to real property, a plaintiff must allege a wrongful interference with his actual possessory rights in the property.") (citing *Loftus v. Mingo*, 511 N.E.2d 203, 210 (Ill. App. Ct. 1987)); *Krejci v. Capriotti*, 305 N.E.2d 667, 669 (Ill. App. Ct. 1973) (explaining that trespass "requires that plaintiffs have actual possession at the time the wrongful act is committed."); *see* Am. Compl. ¶¶ 5-6; *see also Obi v. Chase Home Fin., LLC*, 2010 WL 481069, at *4 (N.D. Ill. Nov. 19, 2010) (finding a viable trespass claim in a situation similar to this one).

---

and seizures. *See id*. at 1527 (explaining that a Fourth Amendment plaintiff "need not always have a recognized common-law property interest" but that "legitimate presence on the premises … standing alone, is not enough."). The Court need not decide the issue, given that Cherry has not alleged any state action.

Because legal ownership of the property is not required, the Court cannot grant summary judgment on this claim, and because Cherry has alleged that he was in possession of the property, the count should not be dismissed.

But there is an exception to the actual-possession rule described above. A plaintiff does not necessarily have a trespass claim against the *true owner* of the property where the plaintiff himself has no right to it. *Dean v. Comstock*, 32 Ill. 173, 179 (1863) ("[The defendant] cannot, on any principle of law with which we are acquainted, be rendered responsible to a person having neither a right to the property nor to the possession. Even if he had a naked possession, the owner of the fee had the right of entry, and would not be liable in trespass for exercising the right in a peaceable manner.") (citing *Hyatt v. Wood*, 4 Johns 150, 150 (N.Y. Sup. Ct. 1908) (a person having a legal right to possession "is not liable to … the person who has no right, and is turned out of possession."); *Wilde v. Cantillon*, 1 Johns Cas. 123, 124 (N.Y. Sup. Ct. 1799)). Here, Five Brothers has won summary judgment on the ownership of the property—per the analysis above, U.S. Bank, therefore, has the better claim. But at this juncture Five Brothers has not introduced evidence to establish that it was actually acting as U.S. Bank's agent when it entered and boarded up the property. *See* Pl.'s Resp. at 3. If Five Brothers can produce that evidence during discovery, then the Court would urge Cherry to strongly consider voluntarily dismissing this count (and if he does not, then Five Brothers may seek permission to file an early summary judgment motion on this claim).

**E. Negligence (Count 3)**

Cherry's next claim is for negligence. *See* Am. Compl. ¶¶ 31-34. Cherry alleges that "Defendant Five Brothers was negligent in instructing their employees to break into plaintiff's premises and board up the property," given that Five Brothers "knew or should have known … that there is no self[-]help in Illinois to evict." *Id.* ¶¶ 33-34. Five Brothers argues that Cherry's negligence claim must fail because Five Brothers did not owe Cherry any duty, both because Cherry did not own the property and because Cherry and Five Brothers had no relationship, "contractual or otherwise, that would give rise to a duty." Def.'s Br. at 5.

Five Brothers' argument is not quite right. It *did* owe Cherry an ordinary duty of care. *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012) ("[E]very person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship.") (cleaned up); *see also Thakkar v. Ocwen Loan Servicing, LLC,* 2019 WL 2161544, at *10 (N.D. Ill. May 17, 2019) (explaining that an ordinary duty of care was owed in a similar case alleging an illegal lock-out: "It was a reasonably probable and foreseeable consequence of Ocwen's actions that they might have effects on any individuals who happened to be living at the property, whether or not they were listed on the mortgage."). There is nothing in the law that suggests that Cherry must have a legal interest in the property or a contractual relationship with Five Brothers as a prerequisite to alleging a negligence claim. *C.f. Ward v. K Mart Corp.*, 554 N.E.2d

223, 227 (Ill. 1990) (explaining that a property owner owes even a trespasser a limited duty of care).

But as Five Brothers points out, a negligence claim requires a *breach* of duty, Def.'s Br. at 5 (citing *Guvenoz v. Target Corp.*, 30 N.E.3d 404, 422 (Ill App. Ct. 2015)), and here Cherry has not pled any facts suggesting that Five Brothers breached its duty of ordinary care to him. He pleads only that Five Brothers should have known that it could not evict him without process, but no facts to support why Five Brothers should have known that he lived there, or how Five Brothers was negligent going about the process. *See* Am. Compl. ¶¶ 31-34. What's more, Cherry's response brief does not address the negligence claim at all. *See generally*, Pl.'s Resp. So Cherry has forfeited a response to the motion on this claim, and it is dismissed with prejudice.

### F. Unjust Enrichment (Count 4)

Count 4 is a claim for unjust enrichment. Am. Compl. ¶¶ 35-42. Stating a claim for unjust enrichment requires alleging "that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Cherry pleads that legal theory almost verbatim in his complaint. Am. Compl. ¶ 36. But he fails to allege the facts to support it. In particular, Five Brothers argues that it "has not retained any benefit to [Cherry's] detriment." Def.'s Br. at 6. That is correct. Cherry has not identified anything of value that Five Brothers has taken from him and kept.

Additionally, Illinois law requires that the benefit retained by the defendant be something to which the plaintiff is entitled. *See Alsch v. Teller, Levit & Silvertrust, P.C.*, 2003 WL 22232801, at *7 (N.D. Ill. Sep. 26, 2003); *HPI*, 545 N.E.2d at 679 (requiring that retention of the benefit "violate[] the fundamental principles of justice, equity, and good conscience."). Perhaps Five Brothers was paid for its work by U.S. Bank, and that payment represents its unjust enrichment. But Cherry has not presented any reason to believe that *he* has a right to funds from that payment. And even if Cherry were alleging that Five Brothers kept possession of his apartment for itself—which does not seem to be the case—Five Brothers has established that Cherry has no legal ownership interest in the property (see above). The bottom line is that Cherry has failed to allege the required elements of the tort. Given that he also failed to address these issues in his response brief, *see generally* Pl.'s Resp., the count is dismissed with prejudice.

### G. Intentional Infliction of Emotional Distress (Count 5)

Count 5 of the complaint is for intentional infliction of emotional distress. Am. Compl. at 6. An intentional emotional-distress claim requires that "(1) the defendant's conduct was extreme and outrageous, (2) the defendant either intended that his conduct would inflict severe emotional distress, or knew there was a high probability that his conduct would cause severe emotional distress, and (3) the defendant's conduct in fact caused severe emotional distress." *Zoretic v. Darge*, 832 F.3d 639, 645 (7th Cir. 2016) (cleaned up). "Mere insults, indignities, threats, annoyances, petty oppressions or trivialities are not actionable as intentional

infliction of emotional distress." *Id*. Truly extreme and outrageous conduct is "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003). Courts take several factors into account when evaluating whether conduct is extreme or outrageous, including (1) the degree of control the defendant has over the plaintiff, (2) the defendant's reasonable belief in the legitimacy of their objective, and (3) the defendant's awareness of the plaintiff's susceptibility to emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 810-11 (Ill. 1988). Five Brothers argues that Cherry has failed to plead facts in support of several elements, including extreme and outrageous behavior by Five Brothers; Cherry suffered severe emotional distress; and Five Brothers intended to cause him distress. Def.'s Br. at 7.

There is no bright-line rule on whether a self-help eviction (if this was one) constitutes an extreme and outrageous act in and of itself. *Zoretic*, 832 F.3d at 645 (finding no extreme or outrageous conduct in an improper eviction where the defendants had at least consulted with an attorney "about how to handle the situation."); *Obi*, 2010 WL 4810609, at *5 (finding that the plaintiff stated a claim for IIED based on a wrongful eviction, though "it [was] a close issue"); *Mumm v. Wetter*, 2006 WL 163151, at *2 (N.D. Ill. Jan. 20, 2006) ("An allegedly wrongful eviction … though unpleasant and worrisome, simply is not the type of 'extreme and outrageous' conduct necessary."); *Matthews v. Homecoming Fin. Network*, 2005 WL 2387688, at *7 (N.D. Ill. Sept. 26, 2005) ("Evicting someone from his home without legal justification is extreme and outrageous conduct.").

But here Cherry has pled himself out of court on both the extreme and outrageousness of Five Brothers' conduct, as well as Five Brothers' knowledge or intent that its conduct would cause severe distress. That is because Cherry clearly alleges that he called the CPD, and that the officers who responded spoke to Five Brothers' employees and allowed Five Brothers to continue their work on the property. Am. Compl. ¶¶ 8-10. This is not the sort of behavior that "go[es] beyond all possible bounds of decency." *Feltmeier*, 798 N.E.2d at 80-81. Plus, Cherry has not alleged that he and Five Brothers had any sort of relationship in which Five Brothers had control over him, or that Five Brothers was aware that he was particularly susceptible to emotional distress. *See McGrath*, 533 N.E.2d at 810-11.[4] And again, Cherry failed to discuss this claim in his response. *See generally* Pl.'s Resp. So this claim too is dismissed with prejudice.

## H. Tortious Interference (Count 6)

Cherry's next claim is for tortious interference with economic opportunity. Am. Compl. at 6-7. He alleges that Five Brothers' actions "prevented [him] from carrying out his intentions to [sell] the property" after he "had done significant rehabilitation to [it]." *Id.* Under Illinois law, tortious interference has four elements: "(1) [the plaintiff's] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by

---

[4]If Five Brothers was truly authorized by U.S. Bank to board up the property, then they may also have had a "reasonable belief that [their] objective [was] legitimate." *McGrath*, 533 N.E.2d at 810. But Cherry's theory is that Five Brothers may not have had authorization from U.S. Bank at all, *see* Pl.'s Resp. at 3, and as discussed above, Five Brothers has not introduced any evidence to show that it did at this pleading stage.

17

the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991). Five Brothers argues that Cherry fails to plead facts on essentially every element of the tort (he owned the property; had a valid business expectancy in it; Five Brothers knew of any such expectancy; Five Brothers acted to defeat it; he suffered any damages as a result; and Five Brothers directed its action toward a third party). Def.'s Br. at 8.

It is true that Cherry fails to plead facts to support several of the elements, including that he had a reasonable expectation of entering a valid business relationship, or that Five Brothers knew of and purposefully interfered with that expectation. What's more, the Court must grant summary judgment on this claim simply because Cherry clearly had no valid business expectancy in the property. As described above, he had no legal ownership interest in the property. So he could not reasonably have expected to sell it.

### I. Conversion (Count 7)

Count 7 is a claim for conversion. Am. Compl. at 7. Cherry alleges that Five Brothers intentionally dispossessed him of his personal property. *Id.* Five Brothers argues that Cherry failed to state a claim for conversion because he did not have a legal interest in "the property." Def.'s Br. at 9 ("Plaintiff did not own the Property and had no legal interest in the property and no right to use, occupy, possess or store personal property in that property.").

### 1. Real Property

On the issue of the *real* property, Five Brothers is correct. Cherry has failed to establish that he had the type of legal interest that would give him a right to possession of the property. Succeeding on a conversion claim in Illinois requires a plaintiff to prove "(1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Van Diest Supply Co. v. Shelby Cty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) (citing *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). Cherry has failed to establish a dispute of material fact on the first two elements. As discussed above, he has entirely failed any genuine issue on whether he had an ownership interest in the property. So he does not have any right to the property, much less to immediate possession of it. Five Brothers wins summary judgment on conversion of the real property.

### 2. Personal Property

But Cherry's *personal* property is another question entirely. Cherry clearly alleges that he had "over $35,000 worth of equipment supplies and furniture in the property," Am. Compl. ¶ 24, and that Five Brothers "intentionally dispossess[ed] [him] of the chattel within the property" and "refused to surrender [his] chattel on demand," *id*. at 7. Cherry thus claims that he owned property inside the house, he demanded it, and Five Brothers wrongfully deprived him of it. And Five Brothers fails to offer any argument against Cherry's conversion claim for *personal* property

19

specifically. So Cherry's conversion claim survives dismissal as to his personal property.

Five Brothers also argues that any trespass-to-chattel claim must fail for the same reasons as the conversion claim. Def.'s Br. at 10. But this claim too survives as to Cherry's personal property. Trespass to chattels and conversion are almost identical torts; their difference is "a matter of degree." *Luis v. Smith Partners & Assocs., Ltd.*, 2012 WL 5077726, at *6 (N.D. Ill. Oct. 18, 2012); *see also Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1229 (N.D. Ill. 2005) (describing the sparse caselaw on the Illinois tort of trespass to chattels); 34A Ill. Law and Practice Trespass § 3 ("An injury to or interference with possession, with or without physical force, constitutes a trespass to personal property.") (West 2019). Because Five Brothers fails to raise any new arguments on trespass to chattels, any trespass-to-chattels claim that Cherry has on his personal property also survives.

## J. Fraud

Five Brothers also argues that any fraud claim should be dismissed because Cherry has failed to plead it with specificity. Def.'s Br. at 9-10. Ordinarily, claims must only meet the Rule 8(a)(2) standard. But claims alleging fraud must also satisfy the heightened-pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Thus, Rule 9(b) requires the complaint to "describe the who, what,

when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (cleaned up).

Here, though Cherry uses the word "fraudulent" once in his amended complaint, ¶ 38, he clearly has not adequately pled a claim for fraud—and certainly not by the standards of Rule 9(b). So Five Brothers' motion to dismiss is granted insofar as Cherry intended to plead a fraud claim.

## IV. Conclusion

For the reasons discussed above, summary judgment is granted against Cherry's unjust enrichment, tortious interference, and real-property conversion claims. Cherry's Fourth Amendment, negligence, and intentional infliction of emotional distress claims are also dismissed with prejudice. The wrongful-eviction claim is dismissed without prejudice to a possible amended complaint under the common law. And the trespass and *personal* property conversion/trespass to chattels claims survive.[5] The Court will discuss the discovery schedule at the September 4, 2019 status hearing.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 25, 2019

---

[5]In light of the limited claims that remain, the Court considered again whether the claims still satisfy the required amount for diversity jurisdiction. *See* R. 27. But because the ownership of the property was resolved on summary judgment after factual development, there was no *legal* impossibility that the amount in controversy was more than $75,000.